IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**CESAR ROBERTO CASTRO-GOMEZ,**
**Petitioner**

**v.**

**UNITED STATES OF AMERICA,**
**Respondent**

**Civil No. 05-1257 (PG)**
[Related to Criminal No. 97-011 (PG)]

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

César Roberto Castro-Gómez (hereafter "Castro"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on May 25, 2004 (**Docket No. 1**). An amended motion was filed on July 17, 2004 (**Docket No. 17**). The government filed its response and asked the Court to deny the motion contending that it is devoid of merit (**Docket No. 11**). Attorneys Lydia Lizarribar-Masini and José F. Quetglas also filed responsive briefs (**Docket Nos. 7, 32**). The matter was referred to the undersigned for Report and Recommendation (**Docket Nos. 2, 3**). For the reasons set forth below, this Magistrate-Judge **RECOMMENDS** that the petitioner's motion be **DENIED**.

**I.     Procedural and Factual Background**

On January 22, 1997, Castro was charged along with two other individuals in a two count criminal indictment (**Criminal No. 97-011(PG)**, **Docket No. 10**). A superseding indictment was filed on November 12, 1997, adding additional defendants and additional counts. *Id.* at **Docket No. 69**. Castro was charged in Counts One, Three and Four of the superseding indictment with conspiracy to illegally possess with intent to distribute cocaine all in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; attempt to import and illegally possess with intent to distribute cocaine on board a vessel, in violation of 46 App. U.S.C. § 1903(a) and (b)(1) and 18 U.S.C. § 2; and, aiding and abetting in the unlawful importation of cocaine into the United States, in violation of 21 U.S.C. § 963 and 18 U.S.C. § 2.

Castro entered a guilty plea and then sought to withdraw it (**Criminal No. 97-011(PG)**, **Docket Nos. 177, 221, 261**). The Court denied the motion to withdraw the guilty plea, and

Castro was sentenced to mandatory life imprisonment. *Id.* at **Docket Nos. 266, 282**. On appeal the U.S. Court of Appeals for the First Circuit reversed the trial court's decision. *United States v. Castro-Gómez*, 233 F.3d 684 (1st Cir. 2000). During the pretrial stages, including change of plea, sentencing and on appeal, Castro was represented by Attorney Lydia Lizarribar-Masini (hereafter "Attorney Lizarribar"). After the appellate court issued its decision, a motion was filed for Attorney Lizarribar to withdraw as counsel, and the motion was granted (**Criminal No. 97-011(PG)**, **Docket Nos. 340, 342, 349)**. The case was reopened and Castro proceeded to trial.

Castro was appointed a new attorney, José F. Quetglas (hereafter "Attorney Quetglas"). Court minutes indicated that as of August 6, 2001, Attorney Quetglas was ready for trial, but some differences had arisen between Attorney Quetglas and Castro, so the District Court appointed Attorney Lizarribar as co-counsel. *Id.* at **Docket No. 366**.

Trial commenced on August 7, 2001, and after a six day jury trial, Castro was found guilty of the charges brought against him. *Id.* at **Docket No. 388**. At sentencing on August 23, 2001, the Court determined that Castro had a total adjusted offense level (AOL) of 40 and a criminal history category (CHC) of six (VI). *Id.* at **Docket No. 412**. Castro was sentenced to three terms of life imprisonment, to be served concurrently with one another, a supervised release term of eight years, and a special monetary assessment of $300.00. *Id.* at **Docket No. 392**. Judgment was entered the same day. *Id.*

Castro appealed his sentence and conviction. *Id.* at **Docket No. 393**. He raised the following issues on appeal: whether the district court erred in declining to instruct the jury to consider whether Castro unwillingly participated in the crimes because he was under threats sufficiently grave to ground an affirmative defense of duress; whether the district court erred in permitting a government witness testify about the street value of cocaine; whether the court erred in denying a motion to issue a writ of habeas corpus ad testificandum; and in calculating his criminal history, whether the court erred in failing to treat his prior sentences as "related" and thus not separately countable. *United States v. Castro-Gómez*, 360 F.3d 216-17, 219-20 (1st Cir.

2004). Castro was represented on appeal by Attorney Lizarribar.

On February 23, 2004, after addressing the issues raised, the Appellate Court affirmed the judgment and sentence and rejected each of his claims. *United States v. Castro-Gómez*, 360 F.3d 216 (1st Cir. 2004). Castro did not seek review by the United States Supreme Court.

Castro now brings this § 2255 petition and requests that the Court hold an evidentiary hearing. (**Docket Nos. 1, 17**). He raises a number of grounds which he assert entitles him to § 2255 relief. Petitioner now asserts as follows:

1. His trial attorneys were constitutionally ineffective at all stages of the trial proceeding.

2. He was denied effective assistance of appellate counsel.

3. The trial court denied him a fair trial.

4. His Fifth Amendment Right under the U.S. Constitution was violated due to prosecutorial misconduct.

## II. Conclusions of Law

Pursuant to 28 U.S.C. § 2255 there are four grounds upon which a federal prisoner may base a claim for relief. The petitioner may assert that: 1) the sentence was imposed in violation of the Constitution or laws of the United States; 2) the court was without jurisdiction to impose such sentence; 3) the sentence was in excess of the maximum authorized by law; and, 4) the sentence is otherwise subject to collateral attack. A federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . ." 28 U.S.C. §2255. However, such a petition may be summarily denied where it contains mere bald assertions without specific factual allegations. *Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992).

Additionally, if a motion fails to raise an issue cognizable under § 2255 or if the movant fails to make an adequate representation concerning cause and prejudice, a court may, in its discretion, deny the motion without conducting an evidentiary hearing. R. Governing Sec. 2255 Proceedings 4(b); *see also Barrett v. United States,* 965 F.2d 1184, 1186 (1st Cir.1992). Finally, even a facially adequate petition may be denied without a hearing where the alleged facts are

conclusively refuted by the files and records of the case. *Barrett,* 965 F.2d at 1186; *Lema v. United States*, 987 F.2d 48, 51-52 (1st Cir. 1993).

Castro seeks an evidentiary hearing on his § 2255 motion. However, a prisoner who invokes § 2255 is not entitled to an evidentiary hearing as a matter of right. *See United States v. McGill,* 11 F.3d 223, 225 (1st Cir. 1993). Generally, if the motion is not dismissed after preliminary review, "the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted to determine whether an evidentiary hearing is warranted." R. Governing Sec. 2255 Proceedings 8. "A hearing is not necessary where a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." *See United States v. Carbone,* 880 F.2d 1500, 1502 (1st Cir. 1989) (internal quotations omitted).

In the present case an evidentiary hearing is unnecessary inasmuch as the record before the Court provides all the necessary information. Taking the facts alleged by Castro as true, this Court may evaluate appellate counsel's failure to raise certain issues on appeal and trials counsel's actions or failure to act as matter of law, *Thompson v. Keohane,* 516 U.S. 99, 111 (1995) (citing *Strickland v. Washington,* 466 U.S. 668, 698 (1984)), thus rendering an evidentiary hearing unnecessary. *Cf. United States v. McGill,* 11 F.3d 223, 225-26 (1st Cir. 1993) (placing burden on petitioner under § 2255 to establish need for evidentiary hearing). Therefore, it is RECOMMENDED that Castro's request for an evidentiary hearing be **DENIED**.

### A.     Assistance of Trial Counsel

Castro's main claim is that his trial attorneys rendered ineffective assistance of counsel. He raises several issues under this ground, but his prominent complaints are that his attorneys failed to abide by the Court's Order for a mental evaluation and they failed to interview witnesses to buttress his claims of mental problems.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel at trial. *Strickland v. Washington,* 466 U.S. 668, 686 (1984). To demonstrate a violation of this right, a defendant must show that counsel's performance was constitutionally deficient and

that prejudice resulted. *Id.* at 687. To succeed on an ineffective assistance of counsel claim, Castro "has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Smullen v. United States*, 94 F.3d 20, 23 (1st Cir. 1996). In applying this test, first announced in *Strickland v. Washington*, 466 U.S. 668 (1984), "judicial scrutiny of counsel's performance must be highly deferential." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Hence there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As a corollary, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

"It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Burger v. Kemp*, 483 U.S. 776, 788 (1987). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. at 689.

Each of Castro's claims will be addressed, notwithstanding the fact that Castro has not met his burden to show ineffectiveness of trial counsel.

### 1. Failure to move for a continuance on August 6, 2001.

Castro contends that his attorneys were ineffective in failing to move to continue the trial date in order to prepare his defense. He argues that on August 6, 2001, he notified the Court that he had not discussed the case with his new appointed attorney, Quetglas, and requested the Court postpone the trial so that he could consult with Attorney Quetglas. The Court denied the request and instead appointed Attorney Lizarribar to act as co-counsel. It is Castro's position that his attorneys were ineffective for failing to move for a continuance. Within this ground Castro

argues that at no time during trial did either of his attorneys confer with him for trial purposes.

Attorney Quetglas notes that his initial interview with Castro lasted two hours. Next, on May 25, 2001, he met with Castro for one and one-half hours to discuss the evidence against him. The two met again on August 3 and August 4, on each occasion for two and one-half hours to discuss trial strategy and preparation. Additionally, Attorney Quetglas spent an additional 18 hours in trial preparation. He also discussed the case with co-counsel Lizarribar, particularly the evidence and possible defenses. Lizarribar also indicates to the Court that she was familiar with the evidence in the case and the potential defenses.

Castro goes on to argue that the failure to move for a continuance resulted in ineffectiveness as to the issue of a mental defect defense. He contends that if the trial had been continued, Attorney Lizarribar could have interviewed witness Marcelino Pérez who would have corroborated the basics for a duress defense. Castro speculates that Attorney Lizarribar may or may not have talked and discussed related his mental defect defense with Attorney Quetglas.

The record does not reflect that a continuance was required in this case. Both attorneys indicated that they were ready to proceed to trial. The issue regarding the possible mental defect defense and presenting potential witness Marcelino Pérez are issues discussed in more detail below. Suffice it to say, that counsel found no basis to assert a mental defect defense. More so, it was determined that Pérez's testimony would be of no use to Castro. Notably, at the conclusion of the trial the Court spoke to the attorneys and stated that the case was well tried (**Criminal No. 97-011(PG)**, **Docket No. 413**). The Court pointedly stated to Attorney Quetglas that he was well prepared, did his best, that he did not see any reason why Castro should not be content with the representation that Attorney Quetglas provided, and that Attorney Quetglas ranked "up there" with the most professional and best criminal defense [attorneys]. *Id.*

### 2. Failure to consult adequately with a defendant facing life sentence in the penitentiary.

Castro complains that Attorney Quetglas met with him on only two occasions prior to trial, both times for only a brief period of time. Castro indicates that he provided Attorney Quetglas

names of witnesses but that Quetglas never returned to discuss the case with him and never interviewed any potential defense witnesses. Castro also contends that he was never shown any discovery provided by the government.

As noted above, Quetglas advises the Court that he met with Castro on at least four occasions prior to trial and later during trial and provides information regarding the dates of the meetings and the time spent with Castro. Also, as discussed below, Attorney Quetglas interviewed five witnesses during trial preparation. Quite simply, Castro's allegations do not rise to the level of ineffective assistance of counsel.

### 3. Failure to investigate and prepare adequately for trial.

Here, Castro argues that his attorneys were ineffective in that they failed to interview witnesses. He also contends that Attorney Lizarribar did not interview in advance; the witnesses who testified at trial and never interviewed those who could not testify even through their testimonies were needed to corroborate a valid mental defect defense. Castro specifically refers to Marcelino Pérez-Soto, Mario Durán, Ms. Colón and government witnesses.

Attorney Quetglas advises the court that he interviewed five witnesses at MDC-Guaynabo regarding the possible duress defense; two on August 6, 2001 and three on August 10, 2001. Attorney Lizarribar advises the Court that she has a long standing relationship with Castro and was well versed in the aspects of his case, including the evidence and possible defenses. In particular, Attorney Lizarribar had previously represented Castro in this case at the time he pleaded guilty and on appeal. After she withdrew from the case, the District Court telephoned her and informed her that Castro's trial was due to commence the next day, that he had specifically requested her appointment, and that he would not stand trial unless she acted as co-counsel.

Attorney Lizarribar states that prior to trial and while preparing for trial she interviewed, on several occasions, witnesses Mario Durán-Hernández, Aileen Colón-Segarra, and Elliot García, as well as Castro. She also conducted a site investigation at Marcano Pizza Place. Attorney Lizarribar provides the dates and times that she interviewed the referenced witnesses. She advises that it was Castro who made the decision not to use Elliot García as a witness.

Finally, Attorney Lizarribar advises that the duress defense was developed based upon testimony provided by Castro and his wife, and that the defense witnesses were presented to establish the element of duress. Nonetheless, the Court denied the duress jury instruction. Reconsideration was sought and denied. On appeal, the issue was again raised, but the appellate court found no error by the District Court in denying the instruction. Attorney Lizarribar states that the duress defense was researched extensively and argued to the Court. More so, she indicates that three defense witnesses provided the predicate for each of the elements of the defense, but that the Court found no evidence was presented to establish that Castro did not have an opportunity to escape or contact authorities.

Castro's claims are not borne out by the record. Both Attorney Quetglas and Lizarribar provide evidence of their trial preparation, including the number of hours spent devoted to trial preparation. More so, Attorney Lizarribar specifically refutes Castro's allegations that witnesses Mario Durán and Ms. Colón were not interviewed. Finally, as discussed below, a strategic trial decision was made not to use Pérez as a witness. Based on the evidence on record, it is determined there is no merit to Castro's claim of ineffectiveness.

### 4. Failure to investigate his mental and emotional condition.

Castro posits that had there been a mental evaluation, his attorneys would have rightly relied on the defense of a mental defect. He further argues that counsel failed to investigate or retain the services of a psychiatrists to gather evidence revealing the existence of mental and/or emotional problems. Further, Castro argues that his attorneys' failure to interview a potential witness (Colón) or retain a psychiatric expert, deprived him of a properly supported mental defect defense.

Castro does not state what his mental defect is, but indicates that it started early in his life. Castro further states that his wife had advised personnel at the U.S. Probation Office about his state of mind prior to arrest in 1997. Finally, he indicates that the Court and Attorney Lizarribar were aware of his significant drug use and sickness while he was held in custody at MDC-

Guaynabo.

Attorney Quetglas advises the Court that at the time he was appointed to represent Castro, his mental competency was not an issue. He indicates that Castro was thinking intelligently, logically and coherently, exhibited good memory and concentration and understood the explanation of the charges and evidence against him. Also, Castro was able to relate relevant facts in detail, including dates, names and places. Attorney Quetglas indicates that Castro never mentioned or alluded to a "mental defect defense". More so, counsel argues that Castro was an active participant in the development of the duress defense that was presented at trial.

With regard to the alleged mental defect defense, Attorney Lizarribar indicates that early on in the litigation she had requested the services of a forensic psychiatric and a neuropharmacologist due to Castro's claims that he had become addicted to drugs while he was on supervised release. The Court granted the motion, and ordered that Castro be transferred to the Butner Federal Correctional Center for a competency determination. Attorney Lizarribar advises that Castro did not want to be transferred to Butner and specifically requested her to have the petition withdrawn. Indeed, within the case file there is a motion in which counsel petitions to have the motion for mental evaluation withdrawn and asserts that Castro's family gathered money so that the examination could take place in Puerto Rico (**Criminal No. 97-011(PG)**, **Docket No. 57**). Notably, as stated by Attorney Lizarribar, Castro assisted in the development of his duress defense, which he understood. More so, Attorney Lizarribar considered that at all times Castro was coherent, able to relate facts, dates and places with all the necessary details. Finally, she states that Castro was not incompetent or unable to assist counsel in developing his defense. Actually, this was something in which Castro assisted both trial counsels.

An attorney renders ineffective assistance where he fails to "raise an important, obvious defense without any imaginable strategic or tactical reasons for the omission." *Prou v. United States,* 199 F.3d 37, 48 (1st Cir. 1999) (attorney ineffective in failing to raise government's untimely filing of information seeking sentence enhancement since claim "was a clear winner and presenting it would have risked nothing"). Under this particular scenario, it is to be noted that not

all mental defects or learning deficiencies establish the defense of mental incompetency. A defendant is mentally incompetent to stand trial or to enter a knowing and understanding guilty plea only if it is shown that he lacks a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding--and that he lacks a rational as well as a factual understanding of the proceedings against him. *See Dusky v. United States,* 362 U.S. 402 (1960). *See also Pate v. Robinson,* 383 U.S. 375 (1966).  Here, both Attorney Quetglas and Lizarribar indicated that Castro was able to assist in his defense.  It is clear that the impairments described in Castro's motion fall far short of the mental deficits necessary to assert an insanity defense and any attempt by his counsel to assert the same would have been frivolous.

### 5. Trial counsel deprived him of a psychiatric and psychological examination as ordered by the Court.

Castro claims that prior to his arrest, other people controlled his thoughts because of his state of mind.  Castro claims that even though the Court ordered a mental evaluation, Attorney Lizarribar blocked his right to be certified "fit to stand trial."  Castro argues that his attorneys were ineffective in that they failed to effect the Court Ordered evaluation.

As previously discussed, the Court granted the motion for a mental evaluation and ordered Castro transferred to Butner Federal Correctional Facility for a competency determination. Attorney Lizarribar advises that Castro did not want to be transferred to the Butner Correctional Facility and specifically requested to have the petition withdrawn. As previously discussed, a motion was filed with the Court to withdraw the request for a mental examination asserting that Castro's family had gathered money so that the examination could take place in Puerto Rico (**Criminal No. 97-011(PG)**, Docket No. 57).

Castro's argument is specious, to say the least.  The record in no way indicates that Attorney Lizarribar blocked Castros' efforts to undergo a mental examination.  Rather, the record reflects that she sought the mental evaluations and it was only after Castro indicated he did not want to be transferred out of Puerto Rico and that his family gathered money to pay for a mental examination, that the motion for a mental examination was withdrawn.

Civil Case No. 05-1257 (PG)                                                                 Page 11

### 6.  Failure to interview and call critical defense witness, Marcelino Pérez-Soto.

Castro contends that Marcelino Pérez-Soto would have corroborated his defense of duress and that his attorneys were ineffective in failing to call Perez as a witness.

Attorney Lizarribar advises that whether Marcelino Pérez-Soto would have confirmed a duress defense is speculative. She indicates that she never had information to believe that Pérez would testify on behalf of Castro. Notably, the information she obtained was that any testimony of Perez was of no help to Castro. She also indicates that an insanity defense was never an issue with Castro. More so, Perez could not have testified on this issue as he is not an expert in the field.

Regarding this specific assertion, petitioners must be aware that the decision to call a particular witness is a strategic one. *Lema v. United States*, 987 F.2d 48, 54 (1st Cir. 1993). In deciding whether to call a witness, counsel must weigh the benefits and risks of the anticipated testimony. *Id.* "[T]he witness' demeanor or character may impress the jury unfavorably and taint the jury's perceptions of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused." *Id.* Also, counsel need not "chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial as a matter of law, or, as here, as a matter of fact and of the realities of proof, procedure, and trial tactics." *Cepolonis v. Ponte,* 699 F.2d 573, 575 (1st Cir. 1982). More so, the "decision to interview potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of a particular case." *Lema,* 987 F.2d at 55(citing *Wilkins v. Iowa,* 957 F.2d 537, 540 (8th cir. 1992)("'[a] less than exhaustive investigation is adequate for constitutional purposes . . . if reasonable professional judgments justified limiting its scope'").

The undersigned cannot say that the failure to use Pérez as a witness to support the defense of duress was ineffective. Counsel interviewed and called other witnesses to testify on

Castro's behalf. More so, their investigation indicated that Pérez would not be a positive witness for Castro. This is a clear cut case of an attorney engaging in trial strategy and tactics in an effort to provide the defendant the best possible defense. Because Castro may not agree with the strategy, does not mean that his attorneys acted ineffectively.

### 7.     Issues 7, 8, 9 10, 11, and 12.

Castro raises several claims found at pages two and three of his Amended § 2255 Motion. They are as follows: defense attorneys' deficient performance in their decision to call Castro to testify without considering his mental defect, and without preparing him for his testimony; comments made by Attorney Lizarribar regarding Castro's state of mind amounted to deficient performance; Attorney Quetglas's performance was deficient when he failed to prepare and be present at sentencing; and, counsel was ineffective prior to sentencing in failing to request a new Pre-Sentence Report and failing to object to the USSC 4B1.1 enhancement.

Other than setting forth these claims, Castro makes no argument and points to no specific facts to support these claims. Inasmuch as, Castro makes bald assertions without specific factual allegations, these claims should be denied. *See Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992).

It is also noted that Attorney Quetglas indicates that he spent 9.60 hours discussing the case with Castro and preparing him to testify at trial. With regard to sentencing, Attorney Quetglas indicates that he reviewed the Pre-Sentence Report, met with Castro for 1.40 hours and attended the sentencing hearing. Contrary to Castro's assertions, the sentencing transcript indicates that Attorney Quetglas was present and participated during the same (**Criminal No. 97-011(PG)**, **Docket No. 412**). Finally, it must be noted that when the Pre-Sentence Report was initially prepared, defense counsel made objections to it. *Id.* at **Docket No. 210**.

Accordingly, it is determined that there is no merit to Castro's claim of ineffective assistance of counsel as to the grounds outlined above.

### B.     Prejudice

Finally, it cannot be ignored that the evidence against Castro was overwhelming. *United*

*States v. Castro-Gómez*, 360 F.3d 216, 220 (1st Cir. 2004). Nor can it be overlooked that Castro initially plead guilty to the charges brought against him and was sentenced to life imprisonment. After going to trial he received the same sentence – life imprisonment. Even had his attorneys' performance fell below an objective standard of reasonableness, and there is no indication that it did, nothing indicates that the result of the proceedings would have been different. Castro has failed to show prejudice as a result of any alleged ineffective assistance of counsel.

### C. Assistance of Appellate Counsel

Castro asserts that his appellate counsel was ineffective for failing to raise or preserve meritorious issues during the appellate proceeding.

To succeed on an ineffective assistance of counsel claim, Castro "has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Smullen v. United States*, 94 F.3d 20, 23 (1st Cir. 1996). In applying this test, first announced in *Strickland v. Washington*, 466 U.S. 668 (1984), "judicial scrutiny of counsel's performance must be highly deferential." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Hence there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."*Strickland v. Washington*, 466 U.S. 668, 687 (1984). As a corollary, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U .S. 91, 101 (1955)).

Castro must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). The burden placed on appellate counsel is significant, and courts are reluctant to second-guess tactical decisions. Nonetheless, appellate counsel are expected to cull from the many non-frivolous arguments the best and advocate only those. *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983). To

show that appellate counsel was ineffective Castro must demonstrate that the ignored issues were clearly stronger than those advanced. *Smith v. Robbins,* 528 U.S. at 288. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome". *See Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986). In addition to deficient performance by appellate counsel, Castro must also establish prejudice as a result of same. *Smith v. Robbins*, 528 U.S. at 288.

It takes only a reading of the Appellate Court's decision to determine that Castro's counsel raised a number of issues in an effort to have Castro's conviction and sentence overturned. While appellate counsel was not successful in her quest, it cannot be said that Castro's representation on appeal was ineffective.

IT IS THEREFORE RECOMMENDED that the Motion for relief under 28 U.S.C. § 2255 on the basis of ineffective assistance of appellate counsel be **DENIED**.

### D. Fair Trial/Prosecutorial Misconduct

Castro's last two claims merit little discussion. He contends that the trial court denied him a fair trial, and that his Fifth Amendment Right under the U.S. Constitution was violated due to prosecutorial misconduct. Other than setting forth these grounds, Castro makes no argument and points to no specific facts to support these claims. Inasmuch as, Castro makes bald assertions without specific factual allegations, these claims should be denied. *See Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992).

IT IS THEREFORE RECOMMENDED that the Motion for relief under 28 U.S.C. § 2255 on the basis of an unfair trial and prosecutorial misconduct counsel be **DENIED**.

### III.    Conclusion

Based upon the foregoing analysis this Magistrate-Judge **RECOMMENDS** that the Motions Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (**Docket Nos. 1, 17**) be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72(a) and Local Criminal Rule 157.1.  Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of its receipt. Local Rule Civ. Rule 72(d); Fed. R. Civ. P. 72(b).   Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order.  *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co*., 616 F.2d 603 (1st Cir. 1980).  The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, this 29th day of September, 2005.

S/**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**